United States District Court
Southern District of Texas
**ENTERED**
August 12, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Troy B.,[1] | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL NO. 4:25-CV-2838 |
| | § | |
| Commissioner of Social Security, | § | |
| | § | |
| *Defendant*. | § | |

# **ORDER**

This is a Social Security case for Title II disability insurance benefits.[2] An administrative law judge ("ALJ") found that Plaintiff Troy B. was not disabled under the Social Security Act. He moves to reverse the ALJ's determination under 42 U.S.C. § 405(g) and remand for further administrative proceedings. ECF No. 9. The Social Security Commissioner cross-moves, asking the Court to affirm the ALJ's decision. ECF No. 14.[3]

Based on the briefing, administrative record, and applicable law, the Court grants Plaintiff's motion, reverses the ALJ's determination, and remands the case

[1] The Court uses only Plaintiff's first name and last initial for privacy. *See* COMM. ON CT. ADMIN. & CASE MGMT. OF THE JUD. CONF. OF THE UNITED STATES, MEMORANDUM RE: PRIVACY CONCERN REGARDING SOCIAL SECURITY AND IMMIGRATION OPINIONS (May 1, 2018).

[2] The parties consented under 28 U.S.C. § 636(c). Transfer Order, ECF No. 16.

[3] Plaintiff replied. ECF No. 15.

for further proceedings.

## I. BACKGROUND

Plaintiff is 56 years old and has a high-school education. R. 22, 195, 249.[4] He served in the Navy for three years. R. 378. After being honorably discharged, Plaintiff worked as a Harris County Deputy Sheriff for twenty-eight years. R. 249, 395.

Plaintiff alleges he became disabled on April 2, 2021, suffering from anxiety, high blood pressure, pre-diabetes, and cholesterol. R. 195, 248. In late October 2021, he filed for Title II disability benefits. R. 65–66. His claim was originally denied in December 2022, R. 99–102, and again denied on reconsideration in January 2024, R. 105–107.

Plaintiff requested a hearing with an ALJ to challenge the denials. R. 14. On July 11, 2024, the ALJ held a telephone hearing where Plaintiff appeared and testified, represented by counsel. R. 14. A vocational expert also appeared and testified. R. 14.

After hearing testimony and reviewing Plaintiff's medical records, the ALJ issued an unfavorable decision on August 8, 2024, concluding that Plaintiff was not disabled because he "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore is not disabled

---

[4] "R." citations refer to the electronically filed Administrative Record. ECF No. 7-1.

under the Social Security Act. R. 23.[5] Plaintiff asked the Appeals Council to review the decision, but it declined. R. 1–6.

Plaintiff now appeals the ALJ's decision to this Court. ECF No. 1.

## II. REVIEW STANDARD FOR SOCIAL SECURITY DISABILITY DECISIONS.

In reviewing disability determinations under the Social Security Act, courts are "highly deferential." *Christopher M. v. Bisignano*, 822 F. Supp. 3d 753, 758 (S.D. Tex. 2026) (quoting *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)). Courts ask "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Id.* (*Garcia*, 880 F.3d at 704). "A decision

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at five four. R. 23. At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since April 2, 2021, the alleged onset date" of his disability. R. 16.

At step two, the ALJ determined that Plaintiff had three severe impairments—anxiety, depression, and somatic disorder—and four non-severe impairments—diabetes mellitus, hypertension, hyperlipidemia, and obstructive sleep apnea. R. 16.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 17–18. The ALJ concluded that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with" a few "nonexertional limitations," noting that he "is able to understand, remember, and carry out detailed but not complex instructions, make decisions, attend[,] [and] concentrate on them for extended periods, respond appropriately to routine changes in the workplace, and interact adequately with supervisors and coworkers." R. 18. The ALJ also found that Plaintiff "cannot work in production, paced, assembly line or quota driven work" but could perform "goal oriented" work "without pace" that would be "completed by the end of the shift." R. 18.

At step four, the ALJ determined that Plaintiff was "unable to perform any past relevant work." R. 22.

At step five, the ALJ determined that Plaintiff was not disabled because he could perform "other work that exists in significant numbers in the national economy," including being an industrial cleaner, hospital cleaner, or kitchen helper. R. 23. Thus, the ALJ concluded that Plaintiff is not disabled. R. 23.

is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Id.* (internal quotation marks omitted) (quoting *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (internal quotation marks omitted) (quoting *Salmond*, 892 F.3d at 817). Put differently, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision, but it may not reweigh the evidence or substitute its judgment." *Id.*

However, even where an ALJ "fails to follow proper legal standards in making his or her decision," a court will reverse and remand for further proceedings only if the error was not harmless. *Martinez v. Comm'r of Soc. Sec.*, No. 5:24-CV-124, 2026 WL 191889, at *4 (S.D. Tex. Jan. 6, 2026), *adopted*, No. 5:24-CV-124, 2026 WL 191528 (S.D. Tex. Jan. 22, 2026). An error is harmless "when it is inconceivable that the ALJ would have reached a different conclusion absent the error." *Id.* (internal quotation marks omitted) (quoting *Kilby v. Kijakazi*, No. 4:20-CV-3035, 2022 WL 1797043, at *5 (S.D. Tex. 2022)). "To establish that an error exists that warrants remand, 'a plaintiff must show that the SSA's decision might have been different' had the ALJ followed proper legal standards." *Id.* (quoting

*Cardenas v. Kijakazi*, No. 7:21-CV-135, 2022 WL 2719044, at *6 (S.D. Tex. June 3, 2022), *adopted*, 2022 WL 2715204 (S.D. Tex. July 12, 2022)). Thus, "[m]istakes in the record will only be the basis for remand if such errors would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Id.* (alteration in original) (quoting *Todd C. v. Saul*, No. 4:19-CV-1811, 2021 WL 2651166, at *13 (S.D. Tex. June 28, 2021)).

## III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

### A. The ALJ's Sequential-Step and RFC Analysis.

"The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled." *Christopher M.*, 822 F. Supp. 3d at 758; *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step." *Id.* (citing *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)). Once a claimant is found to be disabled or not disabled "at any point in the five-step review," the analysis terminates. *Id.*; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Plaintiff raises issues related to steps two and five as well as the ALJ's residual functional capacity ("RFC") determination. At step two, an ALJ must determine whether the claimant has a "severe" medically determinable impairment. R. 15. Here, the ALJ determined that Plaintiff had three severe impairments: anxiety,

depression, and somatic disorder. R. 16. The ALJ also concluded that he had four non-severe impairments: diabetes mellitus, hypertension, hyperlipidemia, and obstructive sleep apnea. R. 16.

Next, the ALJ determined Plaintiff's RFC, which "is a determination of what work the claimant can do despite their impairments." *Martinez*, 2026 WL 191889, at *2. In determining the RFC, an ALJ "must consider all of the claimant's impairments, including impartments that are not severe." R. 15–16; 20 C.F.R. §§ 404.1520(e), 404.1545. Here, the ALJ considered Plaintiff's testimony and medical evidence and determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with" a few "nonexertional limitations." R. 18. Specifically, the ALJ found that he "is able to understand, remember, and carry out detailed but not complex instructions, make decisions, attend[,] [and] concentrate on them for extended periods, respond appropriately to routine changes in the workplace, and interact adequately with supervisors and coworkers." R. 18. The ALJ noted that Plaintiff "cannot work in production, paced, assembly line or quota driven work" but could perform "goal oriented" work "without pace" that would be "completed by the end of the shift." R. 18. After determining Plaintiff's RFC, the ALJ proceeded to step four.

At step five, an ALJ must determine whether the claimant can perform "any other work considering his" RFC, "age, education, and work experience." R. 16.

Based on Plaintiff's age, education, work experience, and RFC, the vocational expert testified that Plaintiff would be able work as an industrial cleaner, hospital cleaner, or kitchen helper, each of "which exist[s] in significant number[s]." R. 23. Accordingly, the ALJ determined that Plaintiff was not disabled because he could perform "other work that exists in significant numbers in the national economy." R. 23.

Plaintiff argues that the ALJ erred on several grounds. The Court need only discuss two.

**B. The ALJ's Finding that Plaintiff's Sleep Apnea Was Not Severe Is Not Reversible Error.**

First, Plaintiff contends that the ALJ erred at step two, maintaining that "[t]he ALJ's finding that [Plaintiff's] obstructive sleep apnea is controlled is simply not supported by the record." ECF No. 9 at 5. He points out that although Dr. Chao recommended a CPAP machine to address his sleep apnea, he never obtained one because his insurance would not cover the cost and he could not afford it out of pocket. *Id.* at 6. Thus, Plaintiff argues, his sleep apnea was not "controlled" and the ALJ should have found it to be severe. *Id.*

Even assuming Plaintiff's sleep apnea is severe, the ALJ did not commit reversible error by classifying it as non-severe. The Fifth Circuit has consistently held that any error regarding severity at step two constitutes "harmless error in cases where the ALJ proceeded past step two." *Todd C.*, 2021 WL 2651166, at *5; *Herrera*

*v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (noting the ALJ's failure to make a severity finding at step two was not a basis for remand where the finding would not affect his step five analysis); *Christopher M.*, 822 F. Supp. 3d at 759 (finding "any error in the ALJ's severity findings would be harmless" because the ALJ proceeded past step two); *Rendell H. v. Comm'r of the Soc. Sec. Admin.*, No. 4:24-CV-4382, 2026 WL 466738, at *3 (S.D. Tex. Jan. 20, 2026) ("[T]he ALJ did not commit reversible error at step 2 of the sequential analysis because he did not end his analysis there and proceeded to the next step."), *adopted*, No. 4:24-CV-04382, 2026 WL 465959 (S.D. Tex. Feb. 18, 2026); *Esparza v. Saul*, No. 3:19-CV-2284, 2020 WL 6551272, at *13 (N.D. Tex. Oct. 2, 2020) (citing cases and stating that "[t]he Fifth Circuit has stated that a failure to make a severity finding at step two is not reversible error when an ALJ continues with the sequential evaluation process"). This makes sense because the RFC requires an ALJ to consider all "medically determinable impairments, both severe *and non-severe*." *Christopher M.*, 822 F. Supp. 3d at 759 (emphasis added).

Here, the ALJ proceeded past step two, ultimately determining that Plaintiff was not disabled at step five. R. 23. Thus, any error in classifying Plaintiff's obstructive sleep apnea as non-severe at step two was harmless.

**C. The ALJ's RFC Determination Is Reversible.**

Third, Plaintiff asserts that the ALJ failed to explain why he found a certain

medical opinion persuasive, as required by the regulations. ECF No. 9 at 8–10. When formulating a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence in the case record." *Christopher M.*, 822 F. Supp. 3d at 759 (alterations adopted) (quoting 20 C.F.R. § 404.1520(e)). "To determine 'what weight, if any, to give a medical opinion,' ALJs consider a list of factors[] outlined in 20 C.F.R. § 404.1520c." *Id.* at 760 (quoting *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021)). The two most important factors are supportability and consistency. *Id.* "The supportability factor relates to how much the objective medical evidence and the medical source's explanation support the medical opinion, while the consistency factor relates to the medical opinion's consistency with evidence from other medical sources." *Id.*; 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

Here, state-agency medical consultant Dr. Gary Smith evaluated Plaintiff for anxiety, somatic symptoms, diabetes mellitus, hypertension, and depression. R. 67–68. Based on his observations, Smith found that Plaintiff had "[n]o physical restrictions" but concluded that Plaintiff's anxiety, somatic symptoms, and depression were severe. R. 67–68. Smith determined that Plaintiff's diabetes and hypertension were not severe. R. 68.

The ALJ cited Dr. Smith's report and concluded it was "consistent with the medical records as a whole, and therefore, is persuasive." R. 21. Plaintiff argues that

the "ALJ failed to articulate how he" determined Dr. Smith's report was persuasive and thus fails to "create a logical bridge for this Court to follow." ECF No. 9 at 9–10.

The Court agrees. Although the ALJ concludes that Dr. Smith's report is "consistent with medical records" and "persuasive," he does not expressly identify with which medical records the report is consistent nor explain *why* it is persuasive. R. 21. The ALJ also fails entirely to address the report's supportability. That threadbare analysis leaves the Court little to go off and falls short of the analysis required under the regulations.

Plaintiff contends that the ALJ's inadequate opinion analysis was harmful because it caused him to over-rely on Dr. Smith's opinion and "resulted in the ALJ finding no physical severe impairments[] and no exertional limitations in the RFC." ECF No. 9 at 10. Relying on Smith's report, Plaintiff argues, "is particularly concerning" because "Dr. Smith did not consider, in any capacity, Plaintiff's well documented sleep apnea or obesity." *Id.* The Commissioner maintains that "the ALJ did not unduly rely on Dr. Smith's . . . finding that Plaintiff did not have severe physical impairment" because the ALJ "assessed the evidence before him, including evidence and testimony that was not before Dr. Smith." ECF No. 14 at 14.

The Court finds that the ALJ's reliance on Smith's report was harmful. Plaintiff testified that he "had difficulties staying awake" and that his medications

made him sleepy and required him to take naps during the day. R. 19. He was diagnosed with mild obstructive sleep apnea, R. 459, 468, and his lawyer pointed out during the administrative hearing that Plaintiff's "physical RFC may be impacted by [his] obstructive sleep apnea," R. 35. Although the ALJ cited this evidence, he nonetheless relied on Smith's report to conclude Plaintiff had no physical limitations. R. 21. He did not reconcile Smith's finding of no physical restrictions with Plaintiff's testimony about daytime sleepiness or the effects of his untreated sleep apnea—which is concerning since Smith did not mention or consider Plaintiff's sleepiness in his evaluation. Worse, the ALJ erroneously found that Plaintiff's "sleep apnea has been controlled," even though Plaintiff testified—and his medical records indicate—it was not controlled because he could not afford the CPAP. R. 44–45, 48–49, 468. Unsurprisingly, then, nothing in the RFC assessment addresses limitations stemming from Plaintiff's sleepiness and sleep apnea. At the very least, the ALJ needed to address these impairments and explain why he concluded they imposed no physical limitations.

This analytic omission was harmful because had the ALJ considered—and potentially found—that Plaintiff's excessive sleepiness qualifies as a physical restriction, it would have changed the vocational expert's analysis. In fact, the ALJ proposed two hypotheticals to the vocational expert that illustrate the point precisely. The first hypothetical asked about someone who was "going to be off task an

additional 20 percent of the day due to medically-based symptoms" in "addition to normally scheduled breaks and lunchtime." R. 52. The second one inquired about someone who needed "two additional 15-minute breaks during the normal workday" in addition to "any other regularly scheduled breaks." R. 53. To both, the vocational expert explained that individuals in those circumstances would *not* be able to work as an industrial cleaner, hospital cleaner, or kitchen helper. R. 52–53. Yet, the ALJ nonetheless concluded that Plaintiff suffers from no physical limitations, despite the uncontradicted testimony that his sleep apnea was untreated and his daytime sleepiness caused him to be off task during his work for significant periods of time.

The ALJ's insufficient RFC analysis was therefore harmful error. Thus, the Court reverses the ALJ's decision and remands the case for proper consideration of Smith's report and Plaintiff's sleep apnea, daytime somnolence, and obesity.[6]

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment, ECF No. 9, and **DENIES** the government's cross-motion, ECF No. 14. The Court further **REVERSES** the ALJ's disability determination and **REMANDS** the case to

[6] The Court also notes that the ALJ, by regulation, must properly analyze Plaintiff's obesity. As Plaintiff points out, Social Security Ruling 19-2p "cautions that obesity is associated with and should be more fully considered when a claimant has . . . diabetes . . . ; mental impairments . . . ; and respiratory impairments" and notes that the agency will "consider all symptoms [of obesity] such as fatigue or pain that could limit functioning." ECF No. 9 at 7–8. Although the Court need not reach this issue since it finds the RFC deficient for independent reasons, it notes that the ALJ's analysis conspicuously elides Plaintiff's obesity.

the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Signed on August 12, 2026, at Houston, Texas.

Dena Palermo

**Dena Hanovice Palermo**
**United States Magistrate Judge**